Thank you, Your Honors. My name is David Ness. I'm here on behalf of the petitioner Robert Rose. Mr. Rose filed an ineffective assistance to counsel claim alleging that he was deprived of his ability to engage in plea negotiations or to actually enter into a plea agreement because his attorney neglected to show him that plea agreement. He won on that claim. In doing so, he established that his attorney was ineffective because she didn't inform him of plea agreement and he established prejudice in that he showed that the plea agreement likely would have been presented and accepted by the court. After winning it, however, the district court fashioned a remedy that invited the state trial court and the Montana Supreme Court to deny Mr. Rose any relief. It determined that the prosecution's reoffering of the plea agreement was enough to cure the constitutional violation. It based this determination — based on this determination, it failed to provide Mr. Rose with inadequate, indeed, as it turns out, any kind of remedy for the injuries he suffered as a result of his attorney's malfeasance. Does that assume that an Article III federal court sitting in habeas review has the authority in a situation like this to order the state court to give a defendant a specific sentence? I don't think so, but I don't think what we're asking for here is asking for a direction to the state court to give him a specific sentence. The error that he raised successfully in habeas review was that my trial counsel had received a favorable plea offer, didn't communicate it to me, and I was harmed thereby. Correct. Relief is granted. It goes back to state court. And although, as I understand it, the plea was a little bit different, it was essentially the same. That's correct. As had been hidden or not disclosed to me. This was not, to use the federal analogy, an 11C plea, right? That's correct. There was no binding determination as to sentence. That's correct. And the state court judge retained the discretion, as a result, to either accept the plea or not accept it, correct? In the way that it was remanded. If this plea would have been presented to the court back in 2003, the court could have rejected the plea agreement, but in doing so, it would have had to afford Mr. Rose the opportunity to withdraw his guilty pleas. But I guess I'm having some trouble. Maybe you can explain. If you look at the language in Lafleur, which the district court was doing, and it talks about that the proper exercise of discretion is to send it back and let it be re-offered, right? Correct. Which is exactly what the judge did. So then it would seem to me it would be in the state court's province to entertain these arguments about, well, now it's a re-offer, but we've had this unusual situation with Montana law here, so therefore you should do this and not that. But that's not something that the federal court would control, it seems to me, under Lafleur. Federal courts have discretion to fashion a remedy and to fashion an adequate remedy. I would say that... Right, but they fashioned a remedy to re-offer. And when they re-offered him the plea, wouldn't it have been, if the state court wanted, could have rejected that at the time? The state court could have rejected that plea, but what happened on this remand, ideally and not even ideally, the remedies are supposed to put parties back as close, in the closest proximity they can, to the position that they occupied when the violation occurred, right? How did this not do that? This did not do that because Judge Malloy remanded the case back, invited, that's the words of the Montana Supreme Court, invited the trial judge to just decide whether or not to accept or reject the plea agreement. But isn't the remedy, I mean, what happened to Montana, you know, that's not, I mean, that's how they interpret things, but then isn't the remedy another habeas on what the district court did here, which was read Lafler, look at exactly the same situation and do that, and use the Lafler language, really? But I think what I would fault the district court for here is that Lafler itself cites from Kimmelman, it's cited from this Court's decisions, and, you know, I don't   know if you've heard of it, but it's cited in Riggs v. Fairman, as well as 10th Circuit decision, Williams v. Jones, and all of those cases talk about that for Sixth Amendment violations, number one, the parties should be placed back in the position that they occupied previously. How did this not do that? Because the position that Mr. Rose was in back in 2003 was if he had been shown his plea agreement, and he would have signed it, and he had said, yes, I like that, let's go to the judge, and if you'd been his lawyer at the time, I assume you would have told him on the way to the courthouse, you know, the judge doesn't have to accept this. I can make the greatest argument, moving heaven and earth, but the judge does not have to accept this plea, right? But if the judge would not have accepted the plea, then Mr. Rose would have been able to withdraw his guilty pleas and proceed on to trial. That bargaining power, that position was taken away from him in this remand, because the remand just simply invited the trial court to accept or reject the plea agreement. If you reject the plea agreement, then Mr. Rose has no remedy for the constitutional violation. He couldn't then move to withdraw his plea? He could not, not on the remand. He could not move to withdraw his plea. So the only issue when it was sent back to the state trial court was decide what you want to do here. And by the way, you can deny relief based upon a finding that he wasn't going to accept responsibility back in 2003, when in fact the federal court in granting relief and finding prejudice under Strickland determined that he would have accepted that plea agreement. Okay. Well, in both cases, though, the trial judge had the discretion to accept or reject the plea, right? That's correct. And what you're arguing here is that the district court should have ordered the trial judge to accept the plea? Or at least put Mr. Rose back in the position he would have occupied back in 2003. And that is because it would have given him some sort of bargaining power with the state courts. What would be the language that you think the district court should have put in its order? Well, the language that the district court could have put in its order is to tell the state to reoffer the plea agreement and for the court to decide whether or not to accept the plea agreement. And if the court decided not to accept the plea agreement, to allow Mr. Rose to proceed. It says the state is required to reoffer the equivalent terms of the plea agreement. Do you have any objection to that statement? No. Okay. Not standing alone. Okay. Then it goes on, the district court can exercise discretion in deciding whether to vacate from trial and accept or leave it undisturbed. But if the state reoffered the plea agreement and for some reason the Montana trial court determined that given the status of the law it wasn't going to accept it. And it might not do that anyway, but it could have had that option under this language, could it not? To not accept the plea agreement? To reject the plea? To reject the plea? Yeah. Under that language the court could have rejected the plea, but Mr. Rose should have been armed with an additional safeguard so that if the court did that, then he would be placed back in the position he would have been in 2003 had the court rejected the plea agreement back in 2003. And that position would have been what? Pardon me? That position would have been what? If the court had rejected the plea and then it would put him back in the position he should have been in, what is that position in your view? Well, that position would be that he could withdraw his guilty pleas and proceed on to trial. Did his habeas petition ask for that? Ask that he be allowed to withdraw his guilty plea if the trial court refused the re-offered plea? It did. It did. And it was certainly argued before the district court because that was . . . we made that argument when we filed our objections to the magistrate's findings and recommendations. We argued that again to the district court. We filed a motion for remand with this court. So that issue was placed before the district court, yes. Thank you. Thank you. Good morning. May it please the court. My name is Tammy Plubel. I'm an assistant attorney general from the state of Montana, appearing on behalf of the respondent appellees. The sole issue before this court is whether the federal district court abused its discretion when it imposed the exact remedy developed by the United States Supreme Court in Lafler v. Cooper. The federal district court did not abuse its discretion. It had the authority to formulate a remedy, and it did so in accordance with United States Supreme Court precedents. Mr. Rose mistakenly argues that there's only two ways to restore him to the position that he would have been in back in 2003, when the prosecutor withdrew the plea offer before defense counsel conveyed it to Mr. Rose. Mr. Rose is asking for specific performance, not only on behalf of the state in re-offering the agreement, but he's asking the federal court to order that the state district court, the state trial court, accept the agreement, or if this court were to conclude that the state trial court had the discretion to reject the plea offer, then pursuant to a state statute, Rose is saying that he should be allowed to proceed to trial for a second time, even though he has had an error-free trial and been convicted beyond a reasonable doubt. Do you think, I mean, it's kind of in some ways not in front of us because we would have another habeas, but do you think the state district court had the authority to reject the plea under the mandate and remand? Yes, Your Honor. I do think that the state district court had the authority to reject the plea. I think that was the exact language of the federal district court's order that it was within the trial court's discretion, which is exactly what Lafler contemplates. Under either remedy, Mr. Rose, that he's proposing, he would receive a windfall. I understand, and I may have just simply missed this, that in the original proceedings, he pled not guilty, went to trial and was convicted? Yes. He was convicted of all three offenses, Your Honor. Thank you. Mr. Rose is really asking this court to mandate a remedy that considers only his interests. A plea agreement, while it is an important part of our criminal justice system, is designed to benefit both parties, not just the defendant. Mr. Rose is arguing that the remedy the district court imposed did not put him back into the position that he would have been in, but that is simply not borne out. The position that he would have been in, had he known of the plea offer back in 2003, is he would have accepted it as the federal court district court concluded, but it would have been within the discretion under state law, state statute, whether the trial court accepted it. Moreover, Mr. Rose's position that under state law, he should now be, he should now be allowed to proceed to a second trial, lacks merit. And that issue has been decided by the Montana Supreme Court. I believe I did do a 28 J letter about the Montana Supreme Court's decision in which the Montana Supreme Court specifically held that 4621 to 11 would not apply to circumstances where proposed plea agreement is reoffered pursuant to Lafler. And the obvious reason for that is in that circumstance, they've already received a trial. And if it's a trial that was based, was free of constitutional air, it would be a windfall and it would be a serious detriment to the state to have to retry him again. If there are no further questions, the state of Montana requests that the court conclude that the federal district court did not abuse its discretion when it provided what rose with the exact remedy that Lafler versus Cooper contemplated. Thank you. Thank you. Thank you, your honors. I would neither Lafler nor this, this court's precedent should or can be read to hold that a successful sixth amendment litigant can simply be denied of any sort of remedy. There's no other constitutional right on the books where you can establish some sort of violation and not be entitled to any sort of remedy. That simply makes no sense. This court in Johnson V, I think I'm pronouncing it right, your rebate. In that case, that was kind of the flip side of this, that, that in, in that instance, the individual defendant entered into a plea agreement and as a result of an effective assistance of counsel. But what this court elected to do rather than just simply resentence him, which is what the district court did, was to, was to send it back and place him back in the pre plea in the plea negotiation stage because they said only, only at that time would he have the, the effective bargaining power to, to actually get a decent plea agreement here. It went back. The remand in this case went back with an invitation for the trial judge to essentially ignore the district court's findings, prejudice findings, and to simply deny him any, any kind of relief. And that's exactly what happened. So although Mr. Rose lost his ability to enter into a plea agreement, a plea agreement that was very favorable to him, a plea agreement that agreed to dismiss one felony charge or two felony charges, let him plead to one felony charge in a misdemeanor and receive a sentence of roughly 30 years. Instead, he lost that ability. He went back. The, the trial court simply denied him any kind of relief and reimposed a sentence of 100 years with 20 years suspended. That simply can't, it can't stand. That may be wrong, but isn't the wrong in the Montana court at this point, not the federal district court? Well, I think, I think that the issue is here before, before your honors, because we're challenging the, the remedy that, that the federal district court ordered. So I think that issue is here because that, that's always been our argument. We've, you know, we've certainly have no problem with the district court Strickland findings. We only have an argument with regard to the, to the remedy. So I think that the, this court can and should reverse the, the court's remedy finding in order the court to impose a remedy that, that would allow Mr. Rose to receive the benefit that he's entitled to, is to vindicate his constitutional rights. I, I, I would, I would state too that my opposing counsel references the Montana Supreme Court's decision in this and references the Montana Supreme Court's decision with regard to the Montana code section. It talks about the process that will be used if a plea agreement is rejected. The Montana Supreme Court was following the federal district court when it made that, when it made that decision. And aside from that, because federal district courts are given discretion in fashioning a remedy, the federal district court would certainly be within its power to, to send the case back as this court did in Johnson v. Uribe. Back to a certain stage of the process. In this case, the certain stage of the process would be present the plea agreement. If the trial court decides to reject the plea agreement, then allow Mr. Rose to occupy the position he would have been in back in 2003. In Johnson v. Uribe, they, this court talked about the importance of bargaining power and they didn't want to deprive that defendant of its, of his bargaining power when he went back here, Mr. Rose needs to be with that bargaining power. But I would also, I would also state too, nobody here wanted a new trial. That isn't what was going to happen. Mr. Rose doesn't, doesn't want a new trial, but he would like to at least have that hammer if, to. You know, one of the difficulties of course is that had the Montana court not moved ahead, we would just be looking at this without the answer, so to speak. So I'm trying to put myself in that position as opposed to trying to figure out if the Montana court may or may not have done something wrong, which would be a whole nother habeas petition. Right. And so leaving aside what month, what happened, which we now it's like we know the end of the movie and we got to peak, but if you just put yourself in the position of the Lafler language as issued when the district court did, then it seems to me we'd be hard pressed to say that was an abuse of discretion. From, with the district court. Right. Yeah. Leave aside Montana. What happened in Montana? I mean, I'm, what's your best argument as to why the district court aired? We don't know the answer yet. So now we just sitting there with the district court trying to fashion a remedy. Well, because left, left Lafler sites to Kimmelman case, to the Morrison case, to all those cases and all of those cases talk about the nature of a remedy that has to be provided in the sixth amendment context. And, and, and, and what the court has said in those prior cases is that, is that one, the remedy needs to remove the taint to the violation. The remedy needs to put the parties back in the position that they occupied before. The state should bear the risk of ineffective assistance at council. And the remedy that, that, that the district court ordered here obviated all of the, all of those, because it's simply allowed indeed invited as the Montana Supreme court said, the trial court to just simply say, well, okay, his rights were violated. I don't care. I'm not giving them a remedy. And that's what happened. And the remedy in your view would have been a different sentence. Well, that's what I'm asking. It would have been acceptance of the plea agreement. The, the trial court still had, still had discretion within that plea agreement. It was not shown. The trial court could have imposed a sentence greater than that that was recommended by the prosecution in the plea agreement. But, but that plea, but that plea agreement also envisioned the dismissal of, of two serious felony charges. Thank you. Thank you. Thank counsel for argument in the briefing. In this case, the case just argued is submitted and we're adjourned for the morning. Thank you. Thanks for coming.
judges: Hawkins, McKeown, Teilborg